UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEVIN PAYTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-03858-JRS-DLP |
| | ) | |
| PAUL TALBOT Dr., | ) | |
| CORIZON MEDICAL, | ) | |
| WEXFORD HEALTH SERVICES, | ) | |
| WARDEN DUSHAN ZATECKY, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY GRANTING MOTIONS FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

## I. Background

Plaintiff Kevin Payton, an inmate at the Pendleton Correctional Facility (Pendleton), filed this civil rights action on December 4, 2018. The defendants in this action are Dr. Paul Talbot, Corizon Medical (Corizon), Wexford Health Services (Wexford), and Warden Dushan Zatecky. Mr. Payton alleges that Dr. Paul Talbot, Corizon, and Wexford failed to provide him with timely medical care. He further alleges that Warden Zatecky ordered all medical staff to provide the bare minimum of health care.

All four defendants have moved for summary judgment seeking resolution of the claims against them on the basis that Mr. Payton failed to exhaust his available administrative remedies before filing this action. Dkt. 25; dkt. 32; dkt. 35. For the reasons explained in this Entry, the defendants' motions for summary judgment must be **granted.**

## II. Legal Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *See Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).

The substantive law applicable to the motions for summary judgment is the Prison Litigation Reform Act ("PLRA'"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's

administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

"State law establishes the administrative remedies that a state prisoner must exhaust for purposes of the PLRA." *Lanaghan v. Koch,* 902 F.3d 683, 687 (7th Cir. 2018). "Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015); *see also Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006).

### III. Discussion

#### A. Undisputed Facts

In the screening Entry of May 6, 2019, dkt. 14, the Court described Mr. Payton's claims as follows:

> Mr. Payton alleges that as a result of Officer Ward attacking him on November 16, 2016, he suffered serious injuries. He alleges he complained to medical staff about his injuries for several weeks but he was denied treatment by the physician and staff. He then wrote a health care request stating that one of his testicles had been kicked up into the inguinal canal, he had a hard erection, and he could not urinate since the attack. Once he was seen by medical, he was sent to a local hospital where it was determined that he required surgery (an orchiectomy) on February 14, 2017. He alleges that Superintendent (now called "Warden") Zatecky ordered all medical staff to provide the bare minimum of health care. He further alleges that Dr. Paul Talbot, Corizon Medical, and Wexford Health Services failed to provide him with timely medical care.

Dkt. 14.

The following facts, supported by admissible evidence and taken in the light most favorable to the non-movant, Mr. Payton, are accepted as true for purposes of the motions for summary judgment:

There is an offender grievance program in place at Pendleton. Dkt. 26-1 at 2, ¶ 6; dkt. 26-1 at 8-32. Indiana Department of Correction (IDOC) Policy and Administrative Procedure 00-02-301, Offender Grievance Process, is the IDOC policy governing the grievance process and how an

offender can exhaust his administrative remedies. Dkt. 26-1 at 2, ¶ 6. Offenders are oriented on the grievance process at the intake facility—Reception Diagnostic Center, and again when they arrive at Pendleton. Dkt. 26-1 at 2, ¶ 7.

The grievance process begins with the informal resolution process. *Id.* at 2-3, ¶ 9. Within five (5) business days of the date of the incident, the offender shall contact a member of his Unit Team to obtain State Form 52897 Offender Complaint – Informal Process Level. *Id.* The offender is then required to attempt to resolve his complaint informally by contacting the appropriate staff member within five (5) business days of receiving the informal complaint form. *Id.*

If the informal complaint process does not resolve the offender's issue within 10 business days, he may then proceed to the Level I formal grievance process. *Id.* at 3, ¶ 10. The formal grievance process begins when an offender submits a completed State Form 45471 "Offender Grievance" to the Executive Assistant of Grievance (i.e., Grievance Specialist) within five (5) business days of the date a staff member informs the offender there will be no informal resolution to the grievance, within five (5) business days of the date the offender refuses the informal resolution offered by staff, or the 10th business day after the offender first seeks an informal resolution from staff. *Id.* at 3, ¶ 11.

If it is determined that the grievance does not meet the requirements of the policy, the grievance is returned to the offender along with State Form 45475 "Return of Grievance," notifying the offender of the reason for the return. *Id.* at 3, ¶ 13. If an adequate grievance form is received, the Grievance Specialist enters the grievance, assigns the grievance a case number, and provides a receipt for the grievance to the offender. *Id.* at 3, ¶ 14.

If the offender does not receive either a Return of Grievance Form or a grievance receipt within seven (7) business days after submitting a grievance, the offender must notify the Grievance

Specialist of the missing grievance so that the Grievance Specialist can investigate the matter and respond to the offender. *Id.* at 3-4, ¶ 15.

If the grievance is not resolved in a manner that satisfies the offender, or if he did not receive a response to the grievance within twenty (20) business days of submission, the offender may file an appeal to the Department Offender Grievance Manager at IDOC's Central Office. *Id.* at 4, ¶ 17.

On February 23, 2017, Mr. Payton submitted an informal grievance listing "medical personnel/nurses" as the staff about whom he was complaining. Dkt. 26-1 at 35; dkt. 35-4 at 1; dkt. 41-1 at 23. Mr. Payton complained the medical staff had deliberately not provided him with new bandages daily after his surgery on February 14, 2017. *Id.* Mr. Payton also complained that medical staff had denied him antibiotic cream to place on his wound. *Id.* The informal grievance was reviewed by Aleycia McCullough on February 28, 2017. *Id.* Ms. McCullough responded to Mr. Payton that he had been seen by the provider on February 28, 2017, for follow up and to address his concerns. There is no record that Mr. Payton appealed that response by submitting a formal grievance. Dkt. 26-1 at 6, ¶ 27.

On February 23, 2017, Mr. Payton submitted a second informal grievance, listing "Dr. Talbot/Corizon" as the staff about whom he was complaining. Dkt. 26-1 at 37; dkt. 35-4 at 2; dkt. 41-1 at 21. Mr. Payton complained that after his February 14, 2017, surgery, Dr. Talbot had deliberately refused to give him medication, causing him pain and suffering. *Id.* The informal grievance was reviewed by Ms. McCullough on February 28, 2017. Ms. McCullough responded to Mr. Payton that he had been seen by the provider on February 28, 2017, for follow up and to address his concerns. *Id.* There is no record showing that Mr. Payton submitted a formal grievance in response to Ms. McCullough's response. Dkt. 26-1 at ¶ 27.

The grievance record shows that Mr. Payton did not file any Level I formal grievances regarding the medical personnel, nurses, Dr. Talbot, or Corizon pertaining to his medical treatment he received on or before the February 14, 2017, surgery. Dkt. 26-1 at ¶ 27. There is also no record that Mr. Payton submitted either an informal or formal grievance regarding Warden Zatecky's alleged denying adequate medical care or ordering medical staff to provide only bare minimum care. Dkt. 35-1 at ¶ 26.

**B. Discussion**

In sum, the IDOC grievance process has three steps which an offender must complete: an informal resolution, a formal grievance, and an appeal to the Department Offender Grievance Manager at IDOC's Central Office. There are specific deadlines within which each step must be completed.

With respect to his claim against Warden Zatecky, Mr. Payton has not responded to the evidence showing that he submitted no grievances relating to that claim. Mr. Payton does not argue that he completed the grievance process with respect to that claim. Therefore, Warden Zatecky is entitled to summary judgment because the record is undisputed that Mr. Payton did not exhaust his claim against the Warden.

With respect to the medical defendants, they are correct that Mr. Payton failed to timely respond to their motions for summary judgment. Dr. Talbot and Corizon filed their motion on July 1, 2019, and Wexford's motion for leave to join that motion was granted on July 12, 2019. Dkt. 32. At the latest, Mr. Payton's response was due on August 9, 2019. He filed his response over a month later, on September 11, 2019. Dkt. 41. The medical defendants raised this issue in their reply, dkt. 42, but Mr. Payton did not respond to the timeliness issue in his surreply, dkt. 44. Therefore, the Court finds that Mr. Payton failed to timely oppose the medical defendants' motions

for summary judgment. Their motions could be granted on this basis alone, but the Court will also discuss the substance of the motions for summary judgment now that they are fully briefed.

Mr. Payton opposes the medical defendants' motions for summary judgment on several grounds. First, he alleges that he attempted to complete the grievance process but was prohibited by the Grievance Specialist. He contends that the Grievance Specialist exhibited "stall tactics" or failed to respond to his grievances. Dkt. 41 at 3. Mr. Payton is thereby arguing that the process was not "available" to him. *See Ross v. Blake,* 136 S. Ct. 1850, 1856 (2016) ("A prisoner need not exhaust remedies if they are not 'available.'"). Mr. Payton submitted copies of formal grievances dated December 1, 2016, and December 22, 2016, relating to his alleged November 16, 2016, attack by a correctional officer. Dkt. 41-1 at 3, 5. He also submitted copies of responses to those grievances, returning them to him for various reasons. Dkt. 41-1 at 4, 6. The alleged assault by a correctional officer is not at issue in this action, however, the fact that those grievances were returned to him as incomplete does not demonstrate that the grievance process relating to his medical claims was unavailable to him.

Mr. Payton also asserts that his "initial grievance and all other grievances were combined into one grievance concerning Staff's and Medical's misconduct and treatment of plaintiff." Dkt. 41 at 3. The record reflects, however, that he submitted two informal grievances on February 23, 2017. One was filed against "medical personnel/nurses" and one was filed against "Dr. Talbot/Corizon." Dkt. 26-1 at 35, 37; dkt. 41-1 at 22, 23. Medical staff responded on February 28, 2017, stating that he was seen by a physician on February 28, 2017. *Id.* There was no formal grievance filed in response to those informal grievances. Dkt. 26-1 at 6, §§ 26, 27.

In addition, Mr. Payton "challenges" the "credibility, accuracy, and truthfulness" of the affidavit submitted by Ms. Bodkin, Grievance Specialist. *Id.* at 4. He has not specified in what

ways Ms. Bodkin's affidavit is inaccurate. Conclusory allegations not supported by admissible evidence are not sufficient to create a genuine issue of material fact. "Summary judgment is not a time to be coy: [c]onclusory statements not grounded in specific facts are not enough." *Daugherty*, 906 F.3d at 611 (internal quotation omitted).

Next, Mr. Payton argues that his filing a state law tort claim was equivalent to completing the grievance process within the prison. He is mistaken. *See Norris v. Cohn,* 27 F. App'x 658, 660-61 (7th Cir. 2001) (filing a Notice of Tort Claim with the Indiana Attorney General does not satisfy the PLRA). "The exhaustion requirement is strict." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). The PLRA requires prisoners to "comply with the specific procedures and deadlines established by *the prison's policy.*" *Id.* (emphasis added). The Indiana Tort Claims Act is not a prison policy, and it only applies to "a claim or suit in tort," Indiana Code § 34-13-3-1(a), which a § 1983 claim is not. *See Cantroll v. Morris*, 849 N.E.2d 488, 506 (Ind. 2006) ("[T]he [Indiana Tort Claims Act] does not apply to claims based on 42 U.S.C. § 1983."). A state law tort claim notice is not a prison grievance. *See also Robertson v. Fleece,* No. 3:18-cv-586-DRL-MGG, 2019 WL 4139409 at n. 1. (N.D. Ind. Aug. 30, 2019); *Ogle v. Brown*, No. 216-cv-00083-LJM-DKL, 2016 WL 6163462, at *1 (S.D. Ind. Oct. 24, 2016) ("The Indiana Tort Claims Act is not a prison policy…"); *Pettiford v. Hamilton,* 1:07-cv-675-DFH-TAB, 2008 WL 4083171, at *3 (S.D. Ind. Sept. 3, 2008) ("Filing a Notice of Tort Claim is not a substitute for complying with the administrative process…."). Therefore, the fact that Mr. Payton filed a tort claim notice has no bearing on whether he completed all steps of the prison grievance process.

The undisputed facts demonstrate that the defendants have met their burden of proving that Mr. Payton "had available [administrative] remedies that he did not utilize." *Dale*, 376 F.3d at 656. The record demonstrates that there was an administrative remedy process in place and Mr.

Payton failed to complete the grievance procedure before bringing his claims in this action. Mr. Payton has not identified a genuine issue of material fact supported by admissible evidence that counters the facts established by the defendants.

The consequence of Mr. Payton's failure to exhaust his administrative remedies, in light of 42 U.S.C. § 1997e(a), is that this action must be dismissed without prejudice. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

## IV. Conclusion

For the reasons explained above, the motions for summary judgment filed by defendants Corizon and Dr. Talbot, dkt. [25], and joined by Wexford, dkt. 32, and filed by defendant Zatecky, dkt. [35], are **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:    11/13/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

KEVIN PAYTON
132744
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Brandon Alan Skates
INDIANA ATTORNEY GENERAL
brandon.skates@atg.in.gov

Jarod Zimmerman
KATZ  KORIN CUNNINGHAM, P.C.
jzimmerman@kkclegal.com